GAYLORD DUFF, APPELLANT, V. HAROLD CLARKE, DIRECTOR OF DEPARTMENT OF CORRECTIONAL SERVICES, AND DEPARTMENT OF CORRECTIONAL SERVICES, AN AGENCY OF THE STATE OF NEBRASKA, APPELLEES.

526 N.W.2d 664

Filed February 3, 1995.   No. S-93-617.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Don Stenberg, Attorney General, and Laurie Smith Camp for appellees.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

WHITE, J.

Gaylord Duff pled guilty in September 1988 to first degree sexual assault on a child. Duff was sentenced to 12 to 20 years' incarceration, and upon being found to be a treatable mentally disordered sex offender, Duff was committed to the Lincoln Regional Center for treatment. Duff was ordered to finish the remainder of his sentence at the Department of Correctional Services if he was later found to be no longer mentally disordered, or if he had received the maximum benefit of treatment available at the regional center.

While Duff was committed to the regional center, two laws were enacted which have relevance to this case. L.B. 523, codified as Neb. Rev. Stat. §§ 29-2922 to 29-2936 (Cum. Supp. 1994), and known as the Convicted Sex Offender Act, became effective July 15, 1992. L.B. 816, the relevant part of which is codified as Neb. Rev. Stat. § 83-1,107 (Reissue 1994), and commonly referred to as the new good time law, also became effective July 15, 1992.

In August 1992, Duff elected to be resentenced pursuant to § 29-2934(4) of the Convicted Sex Offender Act. The district court reviewed Duff's sentence and, upon finding that he had reached the maximum benefit of treatment in an inpatient treatment program and that he could not be placed in an aftercare treatment program under conditions consistent with public safety, ordered Duff to serve the remainder of his sentence at the Department of Correctional Services. Duff appealed that judgment to the Nebraska Court of Appeals, which affirmed the district court's order. See *State v. Duff*, 4 NCA 341 (1993) (not approved for permanent publication). Duff then filed a declaratory judgment action in the district court asking the court to determine whether he was entitled to the

new, more lenient good time law set forth in § 83-1,107, since he was resentenced pursuant to the Convicted Sex Offender Act. The district court found that the new good time provisions set forth in § 83-1,107 do not apply to Duff and that the good time law in effect at the time Duff started his sentence controlled his good time computation. Duff appealed the district court's determination to the Court of Appeals, and pursuant to our authority to regulate the caseloads of the appellate courts, we removed this case from the Court of Appeals docket to the Supreme Court docket.

In his first assignment of error, Duff claims that the district court improperly denied him the benefits of § 83-1,107, hereafter known as the new good time law. Duff contends that since he was resentenced, he ought to be given the benefit of the law in effect at the time of his resentencing, which was the new, more lenient good time law.

In *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983), we held that the new good time law then in effect was inapplicable to offenders who started their sentences *before* the effective date of the new law, absent the Board of Pardons' approval, even if the offenders had or had not incurred additional sentences *after* the effective date. *Boston* concerned which law applied when an offender began serving his sentence before the good time law changed and incurred additional sentences after the law changed. We said that "[s]ection 83-1,110 (Cum. Supp. 1974 and Reissue 1981) defines an offender's sentence, for the purpose of good time computations, to be the sum of all sentences he receives, regardless of when incurred." *Boston*, 215 Neb. at 709-10, 340 N.W.2d at 407. Neb. Rev. Stat. § 83-1,110 (Reissue 1994) has not changed in substance since *Boston*. Thus, the law still remains that, for purposes of good time computations, an offender's sentence is the sum of all sentences he receives, regardless of whether additional sentences are imposed after the effective date of the new good time law.

The appellant in *SapaNajin v. Johnson*, 219 Neb. 40, 360 N.W.2d 500 (1985), was sentenced and incarcerated prior to the effective date of the new good time law. He was paroled after the effective date and subsequently broke parole, for which he

was reincarcerated. SapaNajin wanted the benefit of the new good time law which was passed after he was sentenced, but before he was reincarcerated. Relying on *Boston*, we again held that the new good time law was inapplicable to a parolee who started his sentence prior to the effective date of the statute, absent approval of the Board of Pardons. See, also, *Johnson v. Bartee*, 228 Neb. 111, 421 N.W.2d 439 (1988).

We find the rules set forth in *Boston* and *SapaNajin* applicable in Duff's case. Duff's resentencing under the Convicted Sex Offender Act is comparable in effect, for good time computation purposes, to receiving an additional sentence after the effective date of the new law as in *Boston*. The good time law applicable at the time the offender starts serving his sentence controls good time computation, regardless of whether the offender incurs an additional sentence or whether the offender is resentenced pursuant to the Convicted Sex Offender Act. Duff started serving his sentence in 1988. The new good time law became effective in July 1992. In August 1992, Duff asked the district court to resentence him pursuant to the new Convicted Sex Offender Act. The district court accordingly resentenced Duff pursuant to § 29-2934(7). For good time computation purposes, Duff's resentencing after the effective date of the new good time law has the same effect of receiving an additional sentence after the effective date. Thus, in accordance with what we have previously held in *Boston* and *SapaNajin*, we find the new good time law embodied in § 83-1,107 inapplicable to those offenders who start serving their sentences before the effective date of the statute, absent approval of the Board of Pardons, even if the offenders are resentenced pursuant to the Convicted Sex Offender Act.

In *State v. Schrein, ante* p. 256, 526 N.W.2d 420 (1995), we found the new good time provisions set forth in § 83-1,107 applicable to an offender who was convicted and sentenced before the effective date of the statute, but whose conviction and sentence were not *final* until after the effective date of the statute. Schrein thus received the benefit of the new good time law. Schrein's case differs from the case now before us. Schrein's conviction was not considered to be a final judgment until *after* his appeal was final, and thus after the effective date

of the new good time law. Duff's conviction was considered to be a final judgment in 1988, 4 years before the effective date of the new good time law. We found *Boston*, *SapaNajin*, and *Johnson* inapplicable in *Schrein*, but find those cases applicable to Duff's case. We refuse to extend our holding in *Schrein* to encompass proceedings subsequent to a final judgment.

Duff claims in his second assignment of error that since the repealed good time law was used to compute Duff's good time, he was denied his rights under the Equal Protection and Due Process Clauses of the Nebraska and U.S. Constitutions. We addressed this same issue in *Boston, supra*. In *Boston*, we found that the *application* of the good time law to compute the offenders' good time benefits occurred when the offenders started serving the initial sentences, not when the offenders were convicted of subsequent offenses necessitating additional sentences. Thus, the court did not apply a repealed good time law when it computed good time, and the due process claims of the offenders in *Boston* did not have merit. We find the same to be true in Duff's case. The application of the good time law in Duff's case occurred when Duff began serving his sentence, not when he was resentenced pursuant to the Convicted Sex Offender Act, and thus the district court did not apply a repealed law to determine Duff's good time benefits.

Duff also claims that the district court unreasonably and arbitrarily classified Duff differently than all other criminals sentenced after the effective date of the new good time law so that he was thus denied the equal protection of the laws. As we stated in *Boston*, 215 Neb. at 711, 340 N.W.2d at 408, "[T]he standard of review in equal protection cases involving denial of good time is not that of strict scrutiny . . . ." We held that an application of the new good time law to offenders who were sentenced prior to the effective date of the new law without the Board of Pardons' approval was impermissible under Nebraska's Constitution because it amounted to a commutation of a sentence by legislative action in violation of the separation of powers clause.

"Preservation of our government's constitutional separation [of powers] is a rational, if not compelling, reason for the different treatment accorded those first sentenced prior to and

those first sentenced subsequent to the effective date of [the new good time law]." *Boston*, 215 Neb. at 712, 340 N.W.2d at 408. We find that the same is true in Duff's case. Duff was not denied the equal protection of the law, since the preservation of Nebraska's separation of powers is a rational reason for classifying Duff differently than the other criminals sentenced after the effective date of the new good time law. Duff's second assignment of error is meritless for these reasons.

Having found that neither of Duff's two assigned errors has merit, we affirm the district court.

AFFIRMED.